UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x

CROSBY CAPITAL USA, LLC,

                    Plaintiff,

        - against -

AMGUARD INSURANCE CO., NAVILA
ASSET MANAGEMENT INC.,
and MIZANUR RHAMAN,

                    Defendants.

--------------------------------------------------------x

NAVILA ASSET MANAGEMENT INC., and
MIZANUR RHAMAN,

               Third Party-Plaintiffs,

        - against -

AMGUARD INSURANCE CO.,

               Cross-Claim Defendant.

--------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-5990 (PKC) (TAM)

PAMELA K. CHEN, United States District Judge:

        The parties in this action cross-move for summary judgment on the issue of liability under the terms of a homeowner's insurance policy issued by AmGuard Insurance Company ("AmGuard"). (*See* Def.'s Br. in Supp. of Summ. J., Dkt. 52-2 (hereinafter "Def.'s Mot."); *see also* Pl.'s Br. in Supp. of Summ. J., Dkt. 58-18 (hereinafter "Pl.'s Mot.").)[1] Additionally, Plaintiff

---

[1] The Court notes that Plaintiff's motion for summary judgment is replete with typographical errors and is arguably deficient due to blank spaces next to apparent references to exhibits, incomplete case citations, and a Local Rule 56.1 Statement that contains the caption and introduction for the wrong case.

Crosby Capital USA, LLC ("Plaintiff" or "Crosby") moves to amend its Complaint.  (Pl.'s Br. in Supp. of Mot. to Am. Compl., Dkt. 54-1 (hereinafter "Pl.'s Mot. to Am.").)

For the reasons set forth below, the Court denies Plaintiff's motion to amend.  The Court additionally grants Defendant AmGuard's motion for summary judgment.  Plaintiff's cross-motion for summary judgment is therefore denied, and the Complaint and Defendants Navila Asset Management Inc. and Mizanur Rhaman's cross-claims against Defendant AmGuard are dismissed.

## BACKGROUND

I.   **Relevant Facts**[2]

A.   **Property Purchase and Acquisition of Insurance**

There are virtually no undisputed material facts in this case.  (*See* Pl.'s Resp. to Def.'s 56.1 Statement, Dkt. 55-9, at 1–4 (admitting 46 of the 58 facts contained in Defendant AmGuard's 56.1 Statement and stating that Plaintiff "is without sufficient information to respond" to the remaining 12).)  The undisputed timeline of events is set forth below.

In July 2019, Defendant Mizanur Rhaman ("Rhaman") formed Navila Asset Management Inc. ("Navila") for the purpose of purchasing real property located at 415 Bradford Street in Brooklyn, New York ("the Property").  (Def.'s 56.1 Statement (hereinafter "Def.'s 56.1 Statement"), Dkt. 52-1, ¶¶ 1, 2.)  The next month, Rhaman successfully placed the winning bid of

---

[2] Unless otherwise noted, a standalone citation to a party's 56.1 statement denotes that the Court has deemed the underlying factual allegation undisputed.  Any citation to a 56.1 statement incorporates by reference the documents cited therein; where relevant, however, the Court may cite directly to an underlying document.  The Court construes any disputed facts in the light most favorable to Plaintiff, as the non-moving party, for purposes of Defendant's summary judgment motion.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 154 (1970).  However, where Plaintiff either (i) admits or (ii) denies without citing to admissible evidence certain of the facts alleged in Defendant's Local Rule 56.1 Statement (Dkt. 52-1), the Court may deem any such facts undisputed.  *See* Local Rules of the United States District Courts for the Southern and Eastern Districts of New York 56.1(c)–(d).

$577,500 on Auction.com to purchase the Property.  (*Id.* ¶ 3; *see also* Ex. D. to Def.'s Mot., Dkt. 52-8, at ECF 2.)[3]

In November 2019, Navila—not Rhaman—obtained a mortgage and executed a promissory note to Plaintiff for the Property.  (Def.'s 56.1 Statement, ¶ 5; *see also* Ex. F. to Def.'s Mot., Dkt. 52-10, at ECF 7–13 (promissory note), 29–79 (mortgage executed by Navila as borrower and Plaintiff as lender).)  Thereafter, Rhaman—not Navila—sought an insurance policy for the Property and engaged K.S. Billing Associates ("K.S. Billing") to obtain this policy.  (Def.'s 56.1 Statement, ¶ 8.)  On December 5, 2019, pursuant to K.S. Billing's agency agreement with AmGuard, AmGuard issued an insurance policy to Rhaman for the Property.  (*Id.* ¶ 14.)  As part of K.S. Billing Associates' submission to AmGuard, K.S. Billing stated that the Property was "owner occupied." (Def.'s 56.1 Statement, ¶ 13; *see also* Ex. G to Def.'s Mot., Dkt. 52-11, at ECF 6.)  Later that day, K.S. Billing messaged an AmGuard representative asking AmGuard to add "Crossby [sic] Capital USA LLC" as the "mortgagee [h]older," which AmGuard did.  (Def.'s 56.1 Statement, ¶ 15; *see also* Ex. I to Def.'s Mot., Dkt. 52-13.)  The policy for the Property was effective from December 5, 2019 to December 5, 2020.  (Def.'s 56.1 Statement, ¶ 14.)

On December 27, 2019, approximately three weeks after Rhaman had secured the insurance policy with AmGuard, the Property sustained fire damage.  (*Id.* ¶ 20.)  Rhaman submitted a claim to AmGuard three days later.  (*Id.* ¶ 21.)  AmGuard decided to investigate the claim and, on February 17, 2020, sent Rhaman a demand letter for an examination under oath ("EUO") and a Sworn Statement in Proof of Loss form to complete.  (*See* Ex. K. to Def.'s Mot., Dkt. 52-15.)  The EUO took place on May 29, 2020.  (Tr. of EUO, Ex. B. to Def.'s Mot., Dkt. 52-

---

[3] Citations to "ECF" refer to the pagination generated by the Court's electronic docketing system and not the document's internal pagination.

6, at ECF 2.)  During the examination, Rhaman stated that he had never seen the inside of the property before he purchased it—in a photo or otherwise.  (*Id.* at 49:5–25.)  Rhaman also stated that he did not receive keys for the Property before he purchased it (*id.* at 57:13–17), but at some point after the purchase, he knocked on the front door of the Property, and informed the person who answered the door that he (Rhaman) owned the Property and that the occupant would have to leave  (*id.* at 57:21–25; 60:2–7).  Rhaman returned to the Property approximately one week later and, finding the front door open and all occupants gone, changed the locks.  (*Id.* at 63:8–64:15.)  According to Rhaman, from that day until the December 27, 2019 fire, he visited the Property three to four times, each for less than 30 minutes.  (Def.'s 56.1 Statement, ¶ 37.)  Rhaman indicated that he intended to live at the Property but had not taken any concrete steps to move in before the fire.  (*Id.* ¶ 38.)

In the wake of Rhaman's EUO, AmGuard denied his claim for a policy payout on September 15, 2020, stating two grounds for the denial.  (*Id.* ¶ 40.)  First, Defendant Rhaman did not own the Property—Navila did—and therefore there was no relevant coverage for Rhaman to claim under the AmGuard policy.  (Ex. N. to Def.'s Mot., Dkt. 52-18, at 1–3.)  Second, even if Rhaman could show an insurable interest in the Property, he would not be covered under the policy because the Property was not his residence at the time of the loss.  (*Id.*)

On December 8, 2020, Plaintiff, claiming to be the "mortgagee of record," represented by Hasbani & Light, P.C., filed this lawsuit against AmGuard, Navila, and Rhaman, seeking payment under the insurance policy.  (*See* Compl., Dkt. 1 (hereinafter, "Compl.").)

## B.     Transfer of Interest in the Property and the *Leger* Matter

Before the instant lawsuit was filed, however, something legally significant—indeed, dispositive—occurred.  On July 7, 2020, Plaintiff transferred the promissory note executed by

4

Navila for the Property to non-party Simon Leger.  (Def.'s 56.1 Statement, ¶ 42.)  Approximately

one month later, Leger, also represented by Hasbani & Light, P.C., sued Navila and Rhaman in

this Court seeking compensation for defaulted mortgage payments.  *See* Compl., *Leger v. Navila*

*Asset Mgmt.* (hereinafter "*Leger* Matter"), No. 20-CV-3820 (E.D.N.Y. Aug. 20, 2020), ECF No.

1.  This lawsuit was filed nearly three and a half months before the instant lawsuit was filed.  When

Navila and Rhaman failed to appear in the *Leger* Matter, Leger moved for a default judgment

against them.  *See* Mot. for Default J., *Leger*, No. 20-CV-3820 (E.D.N.Y. Nov. 3, 2020), ECF No.

12.  On March 8, 2022, Judge Eric Komitee adopted a report and recommendation issued by

Magistrate Judge Robert M. Levy granting the default judgment motion and ordering a judgment

of foreclosure and sale to enter in the amount of $477,500, the amount of Navila's mortgage.  *See*

*Leger v. Navila Asset Mgmt. Inc.*, No. 20-CV-3820 (EK) (RML), 2022 WL 686703 (E.D.N.Y. Jan.

25, 2022), *R. & R. adopted*, 2022 WL 683745 (E.D.N.Y. Mar. 8, 2022).

However, approximately two weeks later, Navila and Rhaman filed appearances in the

*Leger* Matter and moved to set aside the default judgment.  Mot. to Set Aside Default J., *Leger*,

No. 20-CV-3820 (E.D.N.Y. Mar. 25, 2022), ECF. No. 17.  Concluding that Navila and Rhaman

had been properly served and had failed to demonstrate excusable neglect for their failure to

initially appear, Magistrate Judge Levy found that Navila and Rhaman's default was willful.  *Leger*

*v. Navila Asset Mgmt. Inc.*, No. 20-CV-3820 (EK) (RML), 2023 WL 2352843, at *5 (E.D.N.Y.

Feb. 6, 2023).  One of the reasons provided by Magistrate Judge Levy in reaching this conclusion

was that Rhaman had indicated in his deposition in the instant case that he was aware of the *Leger*

Matter.  *Id.* at *5.  Judge Komitee adopted Magistrate Judge Levy's report and recommendation,

*Leger v. Navila Asset Mgmt. Inc.*, No. 20-CV-3820 (EK) (RML), 2023 WL 2349581 (E.D.N.Y.

Mar. 3, 2023), and a judgment of foreclosure and sale for the Property was issued on November

1, 2023, *Leger*, No. 20-CV-3820 (E.D.N.Y. Nov. 1, 2023), ECF No. 28, a month before this lawsuit was filed by Plaintiff using the same law firm.

## II.    Procedural History

On December 8, 2020, Plaintiff filed the instant lawsuit against Defendants AmGuard, Navila, and Rhaman seeking a declaratory judgment to compel the payment of the proceeds of the insurance policy issued to Rhaman by AmGuard.  (Compl., ¶¶ 33–35.)  The Complaint alleges breach of contract (Count One) and breach of the implied covenant of good faith and fair dealing (Count Two).[4]  (*Id.* ¶¶ 20–32.)  In its Complaint, Plaintiff claims to hold the mortgage secured by the Property.[5]  (*Id.* ¶ 14.)

In their answer to Plaintiff's Complaint, Navila and Rhaman filed several cross-claims against AmGuard.  Specifically, Navila and Rhaman asserted breach of contract and negligence claims, and sought a declaratory judgment stating that AmGuard must pay out the proceeds of the policy.  (*See* Dkt. 18, at 6–11.)

On May 26, 2022, the Court held a pre-motion conference ("PMC") on the parties' intention to file cross motions for summary judgment.  (*See* 5/26/2022 Minute Entry.)  When the Court asked Plaintiff's counsel why Leger was not the plaintiff in this lawsuit, as it seemed that he was the mortgagee, counsel from Hasbani & Light, P.C. represented that a servicing agreement between Plaintiff and Leger authorized Plaintiff to "maintain . . . and secure the [P]roperty,"

---

[4] The Complaint improperly labels its request for a declaratory judgment as a third, independent cause of action.  *See Daytree at Cortland Square, Inc. v. Walsh*, 332 F. Supp. 3d 610, 627 (E.D.N.Y. 2018) ("It is well settled that a request for declaratory and/or injunctive relief is not an independent cause of action.").

[5] AmGuard's motion papers paint this as an "intentionally false" representation.  (Def.'s Mot., at 12.)  At the pre-motion conference ("PMC"), the Court noted that Plaintiff's choice of wording "had legal significance."

including pursuing insurance claims and handling foreclosure matters.  The Court again asked why Plaintiff would not have at least included Leger as a named plaintiff or brought this lawsuit on Leger's behalf, to which Plaintiff's counsel represented that there was "plenty of case law" establishing the right of servicers to sue on behalf of the owner if the servicing agreement provides for it.  However, counsel went on to say that if "the Court would allow us to make things easier," Plaintiff would amend the Complaint to add Leger. AmGuard objected because the two-year statute of limitations for such a claim had run.

During the discussion of the contemplated motions for summary judgment, Plaintiff indicated that it would not be moving for summary judgment against Rhaman and Navila because there was no theory of liability against them—despite them being named as defendants in the Complaint—as the Complaint's claims were directed at AmGuard for breach of contract and the implied covenant of good faith and fair dealing.  (*See* Compl., ¶¶ 20–27; 28–32.)

## DISCUSSION

### I.      Plaintiff Crosby's Motion to Amend[6]

During the Court's May 26, 2022 PMC with the parties, the Court noted that Plaintiff would be permitted to file a motion to amend the Complaint to add Leger as a plaintiff in this lawsuit. However, the Court also noted that Plaintiff would "have an uphill battle" on this motion because of the statute of limitations, and because of the questionable diligence exercised by Plaintiff's counsel in its initial pleading.

---

[6] Plaintiff presents its motion as a motion to amend under Federal Rule of Civil Procedure ("FRCP") 15, and not a motion to substitute the real party in interest under FRCP 17.  However, because FRCP 17 is applicable to the requested amendment in this case, the Court *sua sponte* considers this rule in its analysis.

### A.       Legal Standard

Federal Rule of Civil Procedure 15(a)(1) allows a party to amend its complaint once as a matter of course within 21 days after serving the complaint or within 21 days after a responsive pleading has been served.  *See* Fed. R. Civ. P. 15(a)(1).  Where, as here, the time for amendment as a matter of course has long passed, a party may amend its pleading with the opposing party's written consent or with leave of the Court.  Fed. R. Civ. P. 15(a)(2).  "The [C]ourt should freely give leave [to amend] when justice so requires." *Id.*  Nevertheless, "it is within the sound discretion of the [Court] to grant or deny leave to amend." *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009) (quotation marks omitted).

Certain factors, "such as undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party[,] . . . [and] futility of amendment," may justify a district court's decision to deny leave to amend.  *Williams v. Citigroup, Inc.*, 659 F.3d 208, 213–14 (2d Cir. 2011) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  As relevant here, a court may deny a motion to amend where the movant knew or should have known facts upon which the amendment is based, especially where the movant does not explain the delay.  *See Hutter v. Countrywide Bank*, *N.A.*, 41 F. Supp. 3d 363, 371 (S.D.N.Y. 2014), *vacating in part on other grounds*, 710 F. App'x 25 (2d Cir. 2018).

Federal Rule of Civil Procedure 17(a)(3) provides that a court "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3).  "[O]rdinarily . . . amendments under Rule 17" are allowed "only 'when a mistake has been made as to the person entitled to bring suit and such substitution will not alter the substance of the action.'"  *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*, 790 F.3d

411, 424 (2d Cir. 2015) (quoting *Park B. Smith, Inc. v. CHF Indus. Inc.*, 811 F. Supp. 2d 766, 773 (S.D.N.Y. 2011)).  Where a plaintiff lacks standing to bring a claim, the Second Circuit has held that any effort to cure such defect by utilizing FRCP 17 is "fated to fail." *Id.*

### B.    Application

The Court finds every factor relevant to the FRCP 15 analysis of whether to allow Plaintiff to amend its Complaint favors AmGuard.  First, Plaintiff exercised undue delay in raising the possibility of amendment.  Second, Plaintiff acted in bad faith in failing to include Leger in the Complaint in the first instance.  Third, if the Court were to grant the amendment, AmGuard would suffer undue prejudice, as this case has progressed to summary judgment briefing.  Fourth, any amendment would be futile.

On the first point, Plaintiff's year-and-a-half delay in raising the possibility of amending the Complaint to add Leger speaks for itself.  Indeed, it was not until after the Court and Defendant AmGuard raised serious issues with Plaintiff's pleadings at the May 26, 2022 PMC that Plaintiff suggested the possibility of amending its Complaint.  In an attempt to make its case for amendment, Plaintiff speciously claims that this is a case where "the identity of the party is mistaken."  (Pl.'s Mot. to Am., at 3.)  What this argument fundamentally ignores is that the very same law firm that represents Plaintiff in this matter—Hasbani & Light, P.C.—also represented Leger in the *Leger* Matter, which was filed prior to this lawsuit.  The Court cannot, therefore, conjure a rationale for why Leger would not have been named as plaintiff in this matter, or why the pleadings at least did not make clear that Plaintiff was bringing this lawsuit on behalf of Leger, the actual mortgagee. *See Cnty. of Wash. v. Cntys. of Warren & Wash. Indus. Dev. Agency*, 2 F. App'x 71, 75 (2d Cir. 2001) (affirming district court's decision to deny leave to amend complaint where plaintiff "had

been aware of the factual underpinnings" of the claims "since the outset of [the] litigation").  In any event, "the identity of the party" was certainly not "mistaken."

On the second point, the omission of Leger as a party to this lawsuit demonstrates bad faith on the part of Plaintiff's counsel.  *See, e.g., Agbaje v. Hargrave Mil. Acad.*, 328 F. Supp. 3d 539, 545–46 (W.D. Va. 2018) (denying leave to amend complaint on bad faith grounds where it was "clearly an effort to salvage [plaintiff's] case and avoid summary judgment").  This bad faith is highlighted by Plaintiff not raising the possibility of amending the Complaint until the Court and Defendant AmGuard discussed fundamental flaws in Plaintiff's pleadings at the May 2022 PMC. *Cf. Vine v. Beneficial Fin. Co.*, 374 F.2d 627, 637 (2d Cir. 1967) (affirming district court's determination of bad faith where plaintiff "wait[ed] to see how he would fare" on a motion to dismiss).  Additionally, Plaintiff has shown bad faith by attempting to blame AmGuard for Plaintiff's own failure to include Leger in its pleadings.  (Pl.'s Mot. to Am., at 3 ("AmGuard was aware of Leger's affiliation with the loan[.]").)  Furthermore, AmGuard seems to have only learned that Leger was the actual mortgagee at an October 2021 deposition of a representative of Plaintiff, almost a year after this lawsuit was filed.[7] (Tr. of Dep. of Eitan Korb, Dkt. 58-13.)  Why Hasbani & Light, P.C. chose to bring two separate actions in this Court—one where they represented Leger as the plaintiff and the present case where they represent Plaintiff seeking related, if not the same, relief—is unclear, but it is a pleading decision that has consequences.

As for the third point, which is "the most important factor" in the analysis, *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008), it is without question that Defendant AmGuard would

---

[7] Plaintiff states that "Amguard was aware of the transfer of the note to Simon Leger prior to October 8, 2021," but provides no further information supporting this claim.  (Pl.'s Reply in Supp. of Summ. J., Dkt. 59, at 4.)

suffer prejudice should the Court grant Plaintiff's motion to amend.  The parties have already completed discovery and briefed summary judgment motions.  Plainly, if Leger were added as a party to this matter, discovery would have to be re-opened and further depositions would likely be required, and AmGuard's summary judgment motion would have to be fully re-briefed.  There is simply no justification for the Court to allow this to happen.  Thus, the Court finds that Defendant AmGuard would suffer undue and unfair prejudice should Plaintiff's request to amend the Complaint be granted.  *See Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (denying leave to amend because "permitting the proposed amendment would have been especially prejudicial given the fact that discovery had already been completed and [defendant] had already filed a motion for summary judgment").

As for the fourth and final point, the amendment would be futile due to the time-barred nature of the claim Plaintiff now seeks to add.  (*See* Ex. 2 to Def.'s Br. in Opp'n to Mot. to Am., Dkt. 56-3 (hereinafter "Def.'s Br. in Opp'n to Mot. to Am."), at ECF 20 ("No action can be brought against us unless . . . the action is started within two years after the inception of the loss.").)  Because the fire damage occurred on December 27, 2019, the two-year limitations period ended on December 27, 2021.  Being well outside the statute of limitations, Plaintiff invokes the "relation back" exception of FRCP 15(c) to try to fend off the argument that amending the Complaint to include Leger would not be futile.  (Pl.'s Mot. to Am., at 3; *see also* Pl.'s Reply in Supp. of Mot. to Am., Dkt. 57, at 4–5.)  This effort utterly fails.

An amended complaint that adds a new party "relates back" under Rule 15(c)(1)(C) under the following conditions, *inter alia*:

> (1) the claim must have arisen out of conduct set out in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party should have known that, *but for a mistake of identity,* the original action would have been brought against it[.]

11

*Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (citing *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 468–69 (2d Cir. 1995)).  "[T]he attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs."  Fed. R. Civ. P. 15 advisory committee's note to 1966 amendment.  While Defendant AmGuard concedes that "tests one and two are arguably met" under the relation back doctrine, Plaintiff's argument fails under the third prong.  (Def.'s Br. in Opp'n to Mot. to Am., at 9.)  The Court agrees.

Although "Rule 15(c) explicitly allows the relation back of an amendment due to a 'mistake' concerning the identity of the parties . . . [,] the failure to identify individual [parties] when the plaintiff knows that such [parties] must be named *cannot be characterized as a mistake*."  *Barrow*, 66 F.3d at 470 (emphasis added).  Because Plaintiff knew when this lawsuit was filed that Leger was the mortgagee of the Property, having itself signed the allonge[8] transferring the interest in the property in July 2020, Plaintiff's failure to include Leger as a plaintiff in this action cannot be considered a mistake, but a *decision* to not include him in this lawsuit.  Therefore, Plaintiff has failed to establish that the relation back doctrine applies to these facts, and because of this, allowing the amendment to add Leger would be futile.

Furthermore, although Plaintiff does not specifically invoke FRCP 17, the Court concludes that Plaintiff's motion would fare no better under that analysis.  This is because, while it is true that a court may not dismiss an action for failure to prosecute in the name of the real party in interest, *see* Fed. R. Civ. P. 17(a)(3), FRCP 17 may not be used to add a plaintiff where doing so

---

[8] According to Black's Law Dictionary, an allonge is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements."  *Allonge*, Black's Law Dictionary (11th ed. 2019).  In this case, the allonge was titled "Allonge to Note" and evidences the transfer of the promissory note of $477,500 from Plaintiff to Leger.  (*See* Ex. F to Def.'s Mot., Dkt. 52-10, at ECF 15.)

would alter the factual allegations supporting the original Plaintiff's legal claims.  *See Cortlandt St. Recovery Corp.*, 790 F.3d at 424.  In *Cortlandt*, the Second Circuit addressed the question of whether a plaintiff who was seeking to collect money owed by the defendants under defaulted notes could use FRCP 17 to amend its pleadings to add the true note holders as plaintiffs once it came to light that the original plaintiff lacked title to the notes in question, and thus lacked standing to bring the suit.  *Cortlandt St. Recovery Corp.*, 790 F.3d at 415–16.  The Second Circuit affirmed the district court's denial of plaintiff's motion to add plaintiffs using FRCP 17(a)(3), finding that because the original plaintiff in that action lacked standing to bring the lawsuit on *any* of the claims, adding new plaintiffs would "alter the factual allegations as to the events or participants" in the underlying action, *Cortlandt St. Recovery Corp.*, 790 F.3d at 424–25 (quoting *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997)), and that, as a technical matter, because the plaintiff lacked standing, "there was no valid lawsuit pending before the district court in which to permit an amended complaint," *id.* at 422.  So too here.  Just as the attempt to use FRCP 17(a)(3) to add a plaintiff was "fated to fail" in *Cortlandt*, it similarly would fail in this case.  And, as discussed further below, the Court concludes that Plaintiff lacks standing to bring this action, which must be dismissed.

* * *

For the foregoing reasons, the Court denies Plaintiff's motion to amend the Complaint.

## II.    Defendant AmGuard's Motion for Summary Judgment

Defendant AmGuard moves for summary judgment, seeking declaratory relief that it has no obligation to any parties to this action for losses they incurred due to the December 27, 2019 fire.  For the reasons that follow, the Court grants this motion and thus dismisses Plaintiff's claims

against AmGuard and the cross-claims against AmGuard brought by Defendants Navila and Rhaman.

### A.     Plaintiff's Claims Against Defendant AmGuard Fail

As the Court alluded to in its discussion of Plaintiff's motion to amend, it is clear that Plaintiff lacks standing[9] to bring this action because it had no interest in the Property at the time this lawsuit was filed, and thus, no right to collect on the AmGuard insurance policy for the Property.

It is undisputed that Plaintiff transferred its promissory note for the Property to Leger via an allonge on July 7, 2020.  (*See* Ex. F to Def.'s Mot., Dkt. 52-10, at ECF 16.)  By operation of established New York law, "the note, and not the mortgage, is the dispositive instrument that conveys standing[.]" *Aurora Loan Servs., LLC v. Taylor*, 34 N.E.3d 363, 366 (N.Y. 2015).  Indeed, when a promissory note is transferred, the underlying mortgage follows the note "unless the parties agree that the transferor is to retain the mortgage." *Id.* (citing Restatement (Third) of Property: Mortgages § 5.4, cmt. B (1997)).  Therefore, when Plaintiff executed the allonge to Leger on July 7, 2020, the mortgage followed the note, as there was no express agreement that Plaintiff would retain the mortgage.[10]  Based on this straightforward principle of standing, Defendant AmGuard is entitled to summary judgment on Plaintiff's claims against it, which the Court now dismisses for lack of standing.[11]  *See, e.g.*, *Iwachiw v. Travelers*, No. 14-CV-5615 (SJF) (SIL), 2015 WL

---

[9] In Defendant AmGuard's reply brief, it says that this is not "a matter of standing." (Def.'s Reply in Supp. of Summ. J., Dkt. 53 (hereinafter "Def.'s Reply"), at 3.)  The Court finds that standing is exactly the issue.

[10] This means that Crosby's claim of being the "mortgagee" with respect to the Property is, at best, inaccurate, and at worst, deliberately false.

[11] Under the same principle, Plaintiff lacks standing to bring claims against Defendants Navila and Rhaman.  This is perhaps most clearly illustrated by the fact that Leger successfully

5476070, at *3 (E.D.N.Y. Sept. 15, 2015) (adopting report and recommendation to grant defendant's summary judgment motion on standing grounds).  Even assuming Plaintiff had standing to pursue a loss claim under the AmGuard policy at the time of the fire, that right was extinguished when Plaintiff assigned the Note to Leger.  *See Whitestone Sav. & Loan Ass'n v. Allstate Ins. Co.*, 270 N.E.2d 694, 696 (N.Y. 1971) (holding that a mortgagee's right to insurance proceeds is fixed at the time of the fire loss and that this right may be lost when the mortgagee assigns the mortgage after the fire loss).

In reaching this conclusion, the Court has considered Plaintiff's attempt to argue that it has standing due to its alleged status as the servicer of the loan secured by the Property.  (Pl.'s Opp'n to Def.'s Mot., Dkt. 55 (hereinafter "Pl.'s Opp'n"), at 8–9.)  In the Rule 56.1 Statement attached to Plaintiff's motion for summary judgment, Plaintiff asserts that it "retained the servicing rights to the loan," referencing an Exhibit D.  (Pl.'s 56.1 Statement, Dkt. 58-1, ¶ 8.)  As far as the Court can tell, however, the only item labeled "D" in Plaintiff's submission is an Affidavit of Attempted Service filed in a state court proceeding in 2020 relating to the Property.[12]  Further, in support of

---

brought a foreclosure action against these two defendants in the *Leger* Matter.  Therefore, the Court *sua sponte* dismisses Plaintiff's claims against Navila and Rhaman for lack of subject matter jurisdiction.  *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merk-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005) ("Because the standing issue goes to this Court's subject matter jurisdiction, it can be raised *sua sponte*.").

[12] In keeping with the general disorganization of Plaintiff's filings, the exhibits attached to Plaintiff's 56.1 Statement are not organized alphabetically or in any discernably sequential way, so the Court has found the only exhibit titled "D."  The Court additionally points out that Plaintiff's 56.1 Statement contains clearly erroneous information.  It appears that Plaintiff's counsel, Hasbani & Light, P.C., neglected to change the introductory information in this filing to reflect that this case is assigned to the undersigned and Magistrate Judge Taryn A. Merkl, and instead identifies it as being assigned to Judge William F. Kuntz and Magistrate Judge Vera M. Scanlon.  Additionally, this filing lists "Windward Bora, LLC" as the plaintiff and "Mamadu I. Barrie" as the defendant, noting that the claims fall under New York Real Property Actions and Proceedings Law § 1301 (*see* Dkt. 58-1, at ECF 1)—presumably the remnants of the Hasbani law firm's careless cut-and-

its motion for summary judgment, Plaintiff submitted the affirmation of Eitan Korb, in which Korb simply states, "Plaintiff is the servicer of the note and mortgage and by that virtue it is the holder of said note and mortgage."  (Decl. of Eitan Korb, Dkt. 58-2, ¶ 7.)  Though Korb points to no specific exhibit in support of his statement, the Court has identified a document titled "Rider to Mortgage Loan Purchase Agreement" that contains a provision stating that, "[u]pon closing, Seller will continue to service the Loans for Purchaser" which shall include to "[s]ue for, recover, collect and receive each and every sum of money, debt, account and interest . . . belonging to or claimed by the Owner[.]"  (Ex. to Pl.'s Opp'n, Dkt. 55-8, at ECF 16.)  The next page is a signature page containing the signature of Leger and an empty line where a signature of Plaintiff's representative—Yonel Devico—should be.  (*Id.* at ECF 17.)  The parties have submitted virtually no information for the Court to assess whether this is a valid contract in spite of Plaintiff's missing signature.  However, the Court need not reach that question because, even if Plaintiff had presented the Court with a valid servicing agreement, Plaintiff nonetheless failed to adequately plead that it was bringing this lawsuit *on behalf of* Leger as opposed to in its own name.  "[I]t is well-established that a mortgage servicer has standing to seek relief from the automatic stay, *presuming, however, that the servicer is acting on behalf of a lender* that has standing to seek [] relief."  *In re Idicula*, 484 B.R. 284, 285 n.1 (Bankr. S.D.N.Y. 2013) (emphasis added).  Indeed, in the Complaint, Plaintiff states, falsely, that it "holds a mortgage secured by the Property[.]"  (Compl., ¶ 10.)  Nowhere in the Complaint does Plaintiff reference its purported servicing relationship with Leger, the true holder of the mortgage.

---

paste job from *Windward Bora, LLC v. Barrie*, 19-CV-7272 (EK) (MMH) (E.D.N.Y.), one of many lawsuits the law firm has filed on behalf of *Windward Bora, LLC* in this district.

For these reasons, Plaintiff has failed to establish that it has standing to bring this action. Because of this, the Court grants Defendant AmGuard's motion for summary judgment and dismisses all claims brought against it by Plaintiff.

### B.    The Cross-Claims Brought by Defendants Navila and Rhaman Fail

Defendant AmGuard additionally moves for summary judgment as to the claims brought against it by Defendants Navila and Rhaman as cross-claim plaintiffs.  (Def.'s Mot., at 13–19.) The Court grants this aspect of the motion as well.

Beginning with Navila, it is clear from the face of the policy that Navila is not a named insured, as its name appears nowhere in the policy.  (See Ex. H to Def.'s Mot., Dkt. 52-12, at ECF 7, 11 (insurance policy issued by AmGuard listing Rhaman as the insured and Plaintiff as the "Mortgagee(s)/Lienholder(s)").)  Because the policy contains no reference to Navila, it is not entitled to seek payment under the policy.  "Under New York law, 'where the insurance contract does not name, describe, or otherwise refer to the entity or individual seeking the benefit thereof as an insured, there is no obligation to defend or indemnify.'"  *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 251–52 (2d Cir. 2006) (quoting *State of N.Y. v. Am. Mfrs. Mut. Ins. Co.*, 593 N.Y.S. 2d 885, 885 (N.Y. App. Div. 1993)).  In its opposition to AmGuard's summary judgment motion, Navila does not squarely argue that it is entitled to payment of the policy proceeds, but that "it is unknown as to why the insurance broker (K&S) and AmGuard chose to issue the policy of insurance in the manner it was issued."  (Def. Navila & Def. Rhaman Br. in Opp'n to Def. AmGuard's Mot. for Summ. J., Dkt. 61-1, at 5.)  Putting aside the fact that Navila and Rhaman stipulated to the dismissal of their third-party claims against the insurance broker, K&S Billing, in October of 2021 (see Stip. of Dismissal of Third-Party Action, Dkt. 34), this

argument has no bearing on the fact that AmGuard cannot be held liable for payment to an entity who is a stranger to the policy.[13]

Turning to Rhaman, AmGuard argues that it has no obligation to Rahman for a payout of the Policy proceeds because Rhaman: (1) has no insurable interest in the property, since Navila—not Rhaman—bought the Property (Def.'s Mot., at 14–15); (2) failed to return a Proof of Loss form as required by AmGuard's claim processes, which constitutes a complete defense to a policy payout (*id.* at 15–17); and (3) Rhaman did not live at the Property at the time of the loss, which precludes him from collecting under the policy (*id.* at 17–19).  Assuming without deciding that Rhaman has an insurable interest in the property, the Court finds that he is not entitled to any payout because he failed to return the proof of loss form within the required time frame, which constitutes a valid and complete defense for AmGuard.

"When an insurer gives its insured written notice of its desire that proof of loss under a policy of fire insurance be furnished and provides a suitable form for such proof, failure of the insured to file proof of loss within 60 days after receipt of such notice, or within any longer period specified in the notice, is an absolute defense to an action on the policy, absent waiver of the requirement by the insurer or conduct on its part estopping its assertion of the defense." *Converse*

---

[13] Though Navila did not raise this argument, the Court has also *sua sponte* considered whether Navila was a third-party beneficiary of the insurance contract between AmGuard and Rhaman.  However, in order to show status as a third-party beneficiary, Navila would have to present evidence that "the language of the contract [] clearly evidence[d] an intent to permit enforcement by the third party."  *Consol. Edison, Inc. v. Ne. Utils.*, 426 F.3d 524, 528 (2d Cir. 2005) (cleaned up).  Because Navila has not and cannot point to any contractual language demonstrating an intent to permit third-party enforcement under the AmGuard policy, Navila has shown no entitlement to the proceeds of the policy. *See Milligan v. GEICO Ins. Co.*, No. 20-3726-CV, 2022 WL 433289, at *5 (2d Cir. Feb. 14, 2022) (summary order) (affirming district court's dismissal of claims brought for payment of an automobile insurance policy by plaintiff car owner against a valuation provider who had a separate contract with plaintiff's car insurance provider, and no contract with plaintiff).

*v. State Farm Fire & Cas. Co.*, No. 21-CV-456, 2023 WL 4489510, at *8 (N.D.N.Y. July 12, 2023) (quoting *Igbara Realty Corp. v. N.Y. Prop. Ins. Underwriting Assoc.*, 470 N.E.2d 858, 860 (N.Y. 1984)).  And while "provisions of an insurance contract for furnishing notice of a claim and proof of loss are to be liberally construed in favor of the insured," *Turkow v. Erie Ins. Co.*, 798 N.Y.S.2d 768, 770 (N.Y. App. Div. 2005) (quotation marks omitted), when a party repeatedly and expressly reserves its rights in its communications with the other party, "[s]uch reservations preclude arguments both as to waiver and as to equitable estoppel," *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 176 (2d Cir. 2006).  "[W]hen an insurer reserves its right to deny coverage, estoppel and waiver may not be inferred."  *Converse*, 2023 WL 4489510, at *9 (quoting *Steadfast Ins. Co. v. Stroock & Stroock & Lavan LLP*, 277 F. Supp. 2d 245, 254 (S.D.N.Y. 2003)).

It is undisputed that counsel for AmGuard sent Rhaman's counsel[14] an EUO Demand Letter on February 17, 2020, which included a Proof of Loss Form with instructions for completing and returning the form within 60 days.  (Def.'s 56.1 Statement, ¶¶ 24–25; *see also* Ex. K to Def.'s Mot., Dkt. 52-15, at ECF 3, 7.)  Rhaman's lawyer confirmed receipt of this message on February 21, 2020.  (Def.'s 56.1 Statement, ¶¶ 24–25.)[15]  On March 30, 2020, AmGuard's attorney notified Rhaman's counsel that AmGuard had "not received . . . the sworn statement in proof of loss, which

---

[14] At the time, Rhaman was represented by different attorneys than those who represent him in this lawsuit.

[15] In his responses to AmGuard's 56.1 Statement, Rhaman "admits the proof of loss form was sent but denies the requirement that the form be returned within 60 days."  (Def. Rhaman's Resp. to Def.'s 56.1 Statement, Dkt. 61-2, ¶ 25.)  The Court rejects Rhaman's counter-statement, which is not supported by any evidence, as the letter sent by AmGuard's counsel on February 17, 2020 unequivocally stated that the form must be returned within 60 days.  (*See* Ex. K to Def.'s Mot., Dkt. 52-15, at ECF 3.)

must be returned fully and properly executed in the time frame set forth in the letter" and that AmGuard "continue[d] to reserve all of its rights under the policy, applicable law and otherwise." (Ex. L to Def.'s Mot., Dkt. 52-16, at ECF 3.)  On April 15, 2020—two days before the 60-day window to return the proof of loss form was due—AmGuard's lawyer followed up with Rhaman's counsel, stating: "To date, I still have received no documents. . . . My client continues to reserve all of its rights under the policy, applicable law and otherwise."  (*Id.* at ECF 2.)  The same day, Rhaman's lawyer responded that AmGuard would receive the necessary documents "no later than Monday [April 20, 2020]."  (*Id.*)  However, that did not happen.  The next communication in the series was from AmGuard's attorney on May 26, 2020, which stated: "It is now more than a month after our last communication[.] . . . Your client did not appear for the scheduled EUO . . . and has not returned the sworn statement of proof of loss at all, much less in the time required by the policy."  (*Id.*)  AmGuard's counsel asked Rhaman's attorney if his client intended to continue to pursue his claim and also reiterated that AmGuard "continue[d] to reserve all of its rights under the policy, applicable law and otherwise."  (*Id.*)  AmGuard received the executed proof of loss, which was dated May 8, 2020, via email on May 26, 2020, which was more than a month after the 60-day deadline for submitting the document.  (Ex. M to Def.'s Mot., Dkt. 52-17, at ECF 2.)[16]

Based upon the facts in this case, the Court concludes that AmGuard has provided an "absolute defense to an action on the policy" due to Rhaman's failure to return the executed proof

---

[16] Although Rhaman argues that Governor Cuomo's COVID-related Executive Order tolling "the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding" excuses his delinquent return of the loss form, or constitutes good cause for the late submission of that form, Rhaman's lawyer never asked AmGuard, despite multiple communications between himself and AmGuard's counsel, for an extension to return the form. The record therefore does not support Rhaman's post-hoc excuse to justify finding that AmGuard is not entitled to the well-established, absolute defense permitting non-payment of insurance proceeds where the insured fails to timely submit a sworn proof of loss statement.

of loss form in the specified time.  *See Converse*, 2023 WL 4489510, at *8.  The record makes clear that AmGuard repeatedly and clearly reserved its right to deny coverage based upon Rhaman's failure to provide a sworn statement within the required 60-day period, and thus, no waiver or estoppel can be inferred.  *Converse*, 2023 WL 4489510, at *9 (denying insurance claim based on failure to timely provide proof of loss).  The Court thus grants summary judgment to Defendant AmGuard and dismisses Defendant Rhaman's cross-claim against it.

## CONCLUSION

For the reasons set forth above, the Court (i) denies Plaintiff's motion to amend; (ii) dismisses Plaintiff Crosby Capital USA, LLC's claims against Defendant AmGuard Insurance Company; (iii) *sua sponte* dismisses Plaintiff's claims against Defendants Navila Asset Management Inc. and Mizanur Rhaman; and (iv) dismisses the cross-claims brought by Defendants Navila and Rhaman against Defendant AmGuard.  Because the Court grants summary judgment in favor of Defendant AmGuard, Plaintiff's cross-motion for summary judgment declaring that it is entitled to proceeds from the AmGuard insurance policy and striking Defendant AmGuard's affirmative defenses is denied as moot.  The Clerk of Court is respectfully directed to enter judgment accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated:  March 6, 2024
        Brooklyn, New York